UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL WOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 20-cv- |
| v. | ) | |
| | ) | |
| SECURITY CREDIT SERVICES, LLC, | ) | |
| d/b/a EQUIPRO INVESTMENTS, | ) | |
| | ) | |
| Defendant. | ) | Jury Demanded |

## COMPLAINT

Plaintiff Michael Wood brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA") and alleges:

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to § 1692k(d) of the FDCPA, and 28 U.S.C. § 1331.

2. Venue is proper in this District because parts of the acts and transactions occurred here and Defendant transacts substantial business here.

## STANDING

3. Plaintiff has suffered an injury in fact that is traceable to Defendant's conduct and that is likely to be redressed by a favorable decision in this matter.

4. Specifically, Plaintiff suffered a concrete injury and harm to his reputation as a result of Defendant's sharing of false information regarding an alleged debt, with a third party.

5. Plaintiff has thus suffered an injury as a result of Defendant's conduct, and suffered harm to his reputation, giving rise to standing before this Court. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1544 (2016), quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 580 (1992)

1

(Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.); *Bellwood v. Dwivedi*, 895 F. 2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]").

## PARTIES

6. Plaintiff, Michael Wood ("Plaintiff"), is a resident of the State of Illinois, from whom Defendant attempted to collect an alleged debt originated as a Pentagon Federal consumer credit card account. Plaintiff is thus a "consumer" as that term is defined in 15 U.S.C. §1692a(3) of the FDCPA.

7. Defendant Security Credit Services, LLC d/b/a Equipro Investments ("SCS") is an Ohio corporation that does or transacts business in Illinois. Its registered agent is Illinois Corporation Service C, 801 Adlai Stevenson Drive, Springfield, Illinois, 62703.

8. Defendant SCS is engaged in the business of a collection agency, using the mails and telephone to collect defaulted consumer debts originally owed to others.

9. SCS holds a collection agency license from the State of Illinois.

10. SCS maintains a website, https://equiproinvestments.com/services/, which reads in part as follows:

> Receivables Acquisitions
>
> EquiPro Investments, also known as Security Credit Services, is a trusted receivables purchasing company. Over the past 13 years, we have purchased more than $10B of delinquent and charged-off receivables and partnered with more than 100 creditors originating a variety of credit types ranging from credit cards, to bank loans, to specialty finance accounts and everything in between. Through data mining, analytics and data-driven business decisions, we manage the entire process for purchasing and managing portfolios. We respect the brand of the companies as we manage their receivables.

(https://equiproinvestments.com/services/, Accessed 16 Apr. 2020)

11. SCS lists its tradeline on the credit reports of thousands of consumers nationwide in an attempt to collect debts on its behalf.

12. SCS' principal business purpose is the collection of defaulted consumer debts via interstate commerce and/or the mails, and it is a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

## FACTUAL ALLEGATIONS

13. Plaintiff incurred an alleged debt for services used for personal, family and household purposes, originally for a Pentagon Federal credit card ("alleged debt").

14. Plaintiff used the credit card to make purchases for personal or household purposes, such as for the purchase of groceries for family use.

15. The alleged debt is thus a "debt" as that term is defined at § 1692a(5) of the FDCPA.

16. Due to his financial circumstances, Plaintiff could not pay the alleged debt, and the alleged debt went into default.

17. Plaintiff disputed the amount of alleged indebtedness directly with Pentagon Federal.

18. On or about February 18, 2018 Pentagon Federal communicated the fact of Plaintiff's dispute to the Experian credit bureau. (Ex. A, Redacted Excerpt of Plaintiff's Experian credit report).

19. The alleged debt was thereafter reported as being disputed on Plaintiff's Experian credit report.

20. SCS thereafter purported to have acquired the alleged debt, and began collecting it by causing its own tradeline to be reported on Plaintiff's Equifax credit report.

21. Upon information and belief, Pentagon Federal provided SCS a collection file when SCS alleged to have acquired the alleged debt, which included data such as Plaintiff's contact information, a balance, and any history of representation of Plaintiff, and/or any preexisting dispute of the alleged debt on the file.

22. As the fact of a dispute is the type of information that would be included in the collection file, SCS was on notice of Plaintiff's dispute. See *Hobfoll v. Merchants Credit Guide*, No.18 C 1912 (N.D. Ill. February 13, 2019).

23. SCS substituted its own tradeline for that of Pentagon Federal's sometime in 2018. (Exhibit B, Redacted Excerpt from Plaintiff's Equifax Report).

24. SCS communicated credit information regarding the alleged debt to Equifax, within the last year.

25. SCS failed, however, to communicate the fact of Plaintiff's dispute when it communicated other information to Equifax regarding the alleged debt.

26. SCS thus removed the dispute notation from the tradeline it caused to report.

27. SCS knew or should have known of Plaintiff's dispute when it communicated information regarding the alleged debt to Equifax.

28. SCS had access to Plaintiff's credit reports, where Pentagon Federal had been properly reporting the dispute.

29. 15 U.S.C. § 1692e of the FDCPA provides as follows:

**False or misleading representations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**. . . (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. . . .**

30. SCS failed to communicate a dispute to the Equifax credit reporting agency, in violation of 15 U.S.C. § 1692e(8), when it knew or should have known about the dispute and communicated other information regarding the alleged debt to the credit reporting agency.

31. SCS reports derogatory tradelines on a monthly basis via the Equifax credit reporting agency, on thousands of consumers nationwide.

32. Credit reporting by a debt collector constitutes an attempt to collect a debt. *Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993) (a creditor's report of a debt to a consumer reporting agency is a "powerful tool, designed in part to wrench compliance with payment terms from its cardholder").

33. SCS materially lowered Plaintiff's credit score by failing to note Plaintiff's dispute.

34. A debt reported with no dispute results in a much lower credit score than a report of both the debt and the dispute. *Saunders v. Branch Banking and Trust Co. of VA*, 526 F. 3d 142, 146-47 (4th Cir. 2008).

35. SCS' collection actions caused Plaintiff to experience negative emotions, including frustration, annoyance, agitation, and other garden variety emotional distress.

5

36. Defendant's collection communications are to be interpreted under the "unsophisticated consumer" standard. *Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

## COUNT I—FAIR DEBT COLLECTION PRACTICES ACT

37. Plaintiff re-alleges the above paragraph as if set forth fully in this count.

38. SCS failed to communicate a dispute to the Equifax credit reporting agency, in violation of 15 U.S.C. § 1692e(8), when it knew or should have known about the dispute and when it communicated other information regarding the alleged debt to the credit reporting agency.

WHEREFORE, Plaintiff asks that the Court enter judgment in favor of himself and against Defendant as follows:

A. Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

B. Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2);

C. Costs and reasonable attorney fees pursuant to 15 U.S.C. 1692k(a)(3); and

D. Such other or further relief as the Court deems proper.

## JURY DEMAND

Plaintiff demands trial by jury.

By: /s/*Mario Kris Kasalo*
One of Plaintiff's Attorneys

Mario Kris Kasalo
**The Law Office of M. Kris Kasalo, Ltd.**
20 North Clark Street, Suite 3100
Chicago, IL 60602
Tel 312-726-6160
Fax 312-698-5054
mario.kasalo@kasalolaw.com

## **NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

By: /s/ *Mario Kris Kasalo*
Mario Kris Kasalo