# EXHIBIT

# E

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL WOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:20-cv-02369 |
| | ) | |
| SECURITY CREDIT SERVICES, LLC | ) | |
| d/b/a EQUIPRO INVESTMENTS, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>DECLARATION OF BRETT SOLDEVILA</u>**

The undersigned hereby states and affirms that the below facts are true and correct to the best of his knowledge, information and belief, under penalties of perjury:

1.  I have personal knowledge of the matters set forth in this Declaration, and if called upon to testify as a witness in the above-captioned proceedings (the "Litigation"), I would competently testify to the following.

2.  I am the Chief Compliance Officer at Security Credit Services, LLC d/b/a EquiPro Investments, a Mississippi limited liability company ("SCS"). In such capacity, I am authorized to speak on SCS' behalf on the matters contained in this Declaration.

3.  SCS' principal business purpose consists of purchasing portfolios of asset receivables.

4.  In my role at SCS, I am knowledgeable about SCS' purchase procedures and how account information relevant to the accounts and debts that SCS purchases are acquired, maintained and reported to credit reporting agencies. I am also knowledgeable about SCS' business operations, systems of recordkeeping, and policies and procedures.

5.  Each of the records identified below and attached hereto as Exhibits have been maintained in the regular course and scope of the business of SCS and were created at or near the time of the

acts, conditions or events which they intend to convey by a person with knowledge and a business duty to report.

6.   I have custody and access to SCS's records relating to a Pentagon Federal Credit Union ("PenFed) credit card account bearing account number xxxx-xxxx-xxxx-0267 in the name of Michael J. Wood (the "Account'). I have reviewed the books and records of SCS pertaining to the Account and am familiar with the Account.

7.   SCS' policies and procedures and recordkeeping include, in part, SCS notating events and actions taken with respect to an account purchased by SCS in what SCS commonly refers to as "account notes." This is done in the normal course of SCS' business at or near the time of the event being recorded.

8.   I have custody and access to SCS' account notes for the Account (the "Account Notes"). Attached hereto as **Exhibit 1** is a redacted, but otherwise true and accurate copy, of the Account Notes. **Exhibit 1** has been kept in the course of the regularly conducted business activity of SCS in managing its purchased portfolios and was prepared as a regular practice and custom of that activity at or near the time of the acts and events reported therein by, or from information transmitted by, a person with knowledge of and a business duty to record or transmit those matters.

9.   Although SCS does not credit report every account it purchases, SCS does regularly credit report many of its accounts to Equifax, Experian and TransUnion. When SCS credit reports an account, it uses Metro 2 format – a standard data specification developed by the Consumer Data Industry Association ("CDIA") and published in the CDIA's Credit Reporting Resource Guide.

10. Equifax, Experian and TransUnion require that data furnishers, such as SCS, follow Metro 2 format when furnishing credit information.

11. Attached hereto as **Exhibit 2** are true and accurate excerpts from the 2020 CDIA Credit Reporting Resource Guide pertaining to compliance condition codes to be reported for purposes of complying with federal credit reporting and debt collection statutes.

12. Per the CDIA's Credit Reporting Resource Guide, compliance condition code "XB" is the code to be used when a consumer disputes a debt pursuant to the Fair Debt Collection Practices Act. *See* **Exhibit 2**.

13. SCS has purchased over 14,000 accounts from PenFed since July 2018 and is not aware of a single instance, apart from this Litigation, where it purchased a debt from PenFed that the obligor contended was the subject of a dispute.

14. SCS has no interest in purchasing disputed accounts, which accounts are not good for business, and takes affirmative steps not to purchase such accounts.

15. To ensure that SCS does not purchase disputed accounts, SCS negotiates terms in its purchase agreements that the seller will exclude accounts known to be presently disputed from the pool of accounts sold to SCS.

16. Specifically, as part of its July 25, 2018 purchase agreement with PenFed (the "Purchase Agreement"), pursuant to which Mr. Wood's account was sold, SCS negotiated Article I and Sections 8.5, 8.8, and 8.9 to ensure it was not purchasing disputed accounts. A redacted, but otherwise true and accurate, copy of the Purchase Agreement is attached hereto as **Exhibit 3**.

17. Notably, Section 8.8 of the Purchase Agreement specifically states: "Seller has used commercially reasonable efforts to remove all Ineligible Accounts from the Account Schedule" while Article I defines "Ineligible Account" to include an account "involved in an unresolved dispute with the Seller."

18. At all relevant times, the term "unresolved dispute" as used in the Purchase Agreement has been understood by SCS to mean a dispute that was not resolved to the satisfaction of both PenFed and the accountholder. The term covers accounts for which a dispute investigation has not yet been completed by PenFed as well as accounts where the accountholder disagrees with the results of PenFed's investigation.

19. Because PenFed represents and warrants to SCS that it has used commercially reasonable efforts to remove all accounts with an unresolved dispute, has complied with the Fair Credit Reporting Act and its requirements regarding notating disputes, and has not omitted any material information, SCS does not undertake an independent investigation into whether an account purchased from PenFed is disputed prior to credit reporting the account. Rather, SCS reasonably relies on the representations and warranties made by PenFed in the Purchase Agreement that the accounts purchased are not the subject of a present dispute.

20. In addition to reasonably relying on the contractual representations of PenFed, SCS also reasonably relies upon consumers, such as Mr. Wood, to advise SCS if an account is disputed.

21. In this instance, despite SCS credit reporting the Account since September 2018, Mr. Wood never once advised SCS that the Account was disputed prior to filing the Litigation.

22. Had Wood advised SCS that the Account was disputed, SCS would have timely notified the national credit reporting agencies of the dispute, consistent with its policies and procedures.

23. Specifically, at all relevant times since SCS' purchase of the Account, it has been SCS' policy and procedure that when a consumer or a consumer's representative disputes a debt orally or in writing the account must be restricted upon receipt of the dispute with a compliance condition code of "XB" in SCS' Ontario Systems Artiva collection system ("Artiva").

24. To carry out this policy, SCS' credit reporting staff is trained (which training is carried out at least annually) to perform the following steps: (1) access the consumer's account in Artiva; (2) select "perform action[;]" (3) type "EOSCAR" in the action code field; and (4) select "set EOSCAR dispute[.]" Upon completion of the last step, a notation is time-stamped in the account notes for the account reflecting that the "Account Dispute Status" is changed to "Y[.]" Completion of the last step also ensures that all future credit reporting for the account will automatically include the "XB" compliance condition code.

25. I have reviewed the Account Notes to determine if the aforementioned procedure was ever followed. The Account Notes reflect that the aforementioned procedure was followed on April 21, 2020 after SCS became aware of the Litigation.

26. I have custody and access to SCS' Metro 2 reporting data for the Account. Attached hereto as **Exhibit 4** is a redacted, but otherwise true and accurate, copy of the Metro 2 data reported by SCS for the Account on May 1, 2020. **Exhibit 4** has been kept in the course of the regularly conducted business activity of SCS in credit reporting accounts and was prepared as a regular practice and custom of that activity at or near the time of the acts and events reported therein by, or from information transmitted by, a person with knowledge of and a business duty to record or transmit those matters.

27. **Exhibit 4** confirms that the "XB" compliance condition code was reported by SCS for the Account beginning no later than May 1, 2020.

28. The "XB" compliance condition code continued to be reported by SCS for the Account until January 2021, at which time SCS requested deletion of the tradeline for the Account because it reached the credit reporting date of obsolescence.

29. SCS does not itself engage in collection efforts relative to defaulted accounts purchased by it, but rather outsources collection efforts to licensed third-party collection agencies.

30. The Account Notes reflect that on or about October 2, 2018, SCS placed the Account for collection with Glass Mountain Capital, LLC ("Glass Mountain") – which agency is referred to as "GMC" in the Account Notes.

31. The Account Notes further reflect that on October 8, 2018, Glass Mountain returned the Account to SCS with a "LITIGIOUS" code.

32. The "LITIGIOUS" code refers to a public database search that identifies if consumers have previously filed lawsuits and are therefore higher risk or litigious.

33. The "LITIGIOUS" code does not have any bearing on, nor provide notice as to, whether an account is the subject of a dispute. Rather, it merely notifies SCS that a consumer has filed one or more lawsuits in the past.

34. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 26th day of August 2022

_____
Brett Soldevila

# EXHIBIT
# 1



**Primary**

| Name: | MICHAEL J | WOOD | Balance: | 15325.47 | EOSCAR: | Y |
| Address: | 4555 N KOSTNER AVE | | Tax ID: | ▮▮0043 | Phase: | AUDIT |
| | | | DOB: | ▮1976 | Status: | DISPUTEIH |
| | CHICAGO | IL ... 60630-4109 | Ph: | 312-952-0090 ... | Follow-up: | 4/21/2020 |
| Spouse: | | | Alt Ph: | ... | Acct Rep: | Ext: |
| Creditor Acct: | ▮▮0267 | | Creditor: | Pentagon Federal Cre | Seller Cont: | 909277 |

**View All Notes**

| User | Date | Time | Note Text |
|------|------|------|-----------|
| CH | 8/1/2018 | 03:53p | ALACCLCRID changed from to 3132958 |
| CH | 8/1/2018 | 03:53p | ARACCLCRLPYAMT changed from to $283.00 |
| CH | 8/1/2018 | 03:53p | ARACCLCRLPYPDTE changed from to 12/13/2013 |
| CH | 8/1/2018 | 03:53p | ARACRPRELID changed from to 911250221 |
| CH | 8/1/2018 | 03:53p | ARACPL95 changed from to N |
| CH | 8/1/2018 | 03:53p | ARACSTATUTEBASEDTE changed from to 12/13/2013 |
| CH | 8/1/2018 | 03:53p | ARACSTATUTEBASEFLD changed from to ARACLPYDTE |
| CH | 8/1/2018 | 03:53p | ARACSTATUTEEXPDTE changed from to 12/12/2018 |
| CH | 8/1/2018 | 04:20p | ARRELCONLVL changed from ARCEASE to AROPEN |
| CH | 8/1/2018 | 04:20p | ARRELSTATUSID changed from to FLIP |
| CH | 8/1/2018 | 04:20p | Action ARMATCH: No match found. |
| CH | 8/1/2018 | 04:20p | Status changed to FLIP. |
| CH | 8/1/2018 | 04:20p | (Acct. Mgt.) Action ARCHGPHASE: Phase changed from STAGING to SECONDARY. |
| CH | 8/1/2018 | 04:20p | (Acct. Mgt.) Phase changed from NEWBUS to STAGING. |
| CH | 8/1/2018 | 04:20p | ARENADRSOURCE changed from to CLIENT |
| CH | 8/1/2018 | 04:20p | New business balances have been added. |
| CH | 8/1/2018 | 04:20p | The account approval is complete. |
| CH | 8/1/2018 | 04:22p | (Acct. Mgt.) Action FSPLCACCT: Successfully added placement request. |
| CH | 8/1/2018 | 04:25p | ARRELSTATUSID changed from FLIP to STAGING |
| CH | 8/1/2018 | 04:25p | Action ARREQLINK: Link report requested for MICHAEL J WOOD using BANKO |
| CH | 8/1/2018 | 04:30p | Link Request Successfully sent to Link server for Responsible Party MICHAEL J WOOD. (Request ID = 3499910,Service Type = BANKO) |
| sys | 8/1/2018 | 04:53p | Action ARREQLINK: Link report requested for MICHAEL J WOOD using EXPSCORE |
| CH | 8/1/2018 | 04:53p | Link service request returned from vendor Dolan Information - BANKO[BK], for service BANKO for the Responsible Party MICHAEL J WOOD. |
| sys | 8/1/2018 | 04:56p | Link Request Successfully sent to Link server for Responsible Party MICHAEL J WOOD. (Request ID = 3501489,Service Type = EXPSCORE) |
| sys | 8/1/2018 | 05:39p | ARRELSTATUSID changed from STAGING to NEWACCT |
| sys | 8/1/2018 | 05:39p | Action FSPLCACCT: Successfully added placement request. |
| sys | 8/1/2018 | 05:39p | Link service request returned from vendor Experian Inc.[EX], for service EXPSCORE for the Responsible Party MICHAEL J WOOD. |
| sys | 8/1/2018 | 05:39p | ARACTYP changed from to DARKGREY |
| sys | 8/1/2018 | 05:39p | ZZACM2DELETE changed from to N |
| sys | 8/7/2018 | 04:43p | (Acct. Mgt.) Forwarding to vendor MRS requested. |
| sys | 8/7/2018 | 04:43p | ARACVENDID changed from to MRS |
| sys | 8/7/2018 | 04:48p | ARRELSTATUSID changed from NEWACCT to NEWACCTPLC |
| sys | 8/7/2018 | 04:48p | Action ARCHGSTAT: Follow-up date changed from 08/01/2018 to 08/07/2018. |
| sys | 8/7/2018 | 04:48p | ARACVENPLACEDTE changed from to 08/07/2018 |
| NJ | 9/16/2018 | 06:06a | ARRELSTATUSID changed from NEWACCTPLC to VNDRCLREQ |
| sys | 9/20/2018 | 03:48p | ZZACM21STRPTDTE changed from to 09/20/2018 |
| sys | 9/20/2018 | 03:48p | ZZACM21STRPTDTE changed from to 09/20/2018 |
| NJ | 9/23/2018 | 08:01a | (Acct. Mgt.) Action ARCHGPHASE: Phase changed from SECONDARY to TERTIARY. |
| NJ | 9/23/2018 | 08:01a | ARACVENDID changed from MRS to |
| NJ | 9/23/2018 | 08:01a | ARACVENPLACEDTE changed from 08/07/2018 to |
| NJ | 9/23/2018 | 08:04a | ARRELSTATUSID changed from VNDRCLREQ to VNDUNA |
| NJ | 9/23/2018 | 08:04a | (Acct. Mgt.) Action FSPLCACCT: Successfully added placement request. |

| | | | |
|---|---|---|---|
| KR | 9/26/2018 | 04:30p | ARRELSTATUSID changed from VNDUNA to VNDASG |
| KR | 9/26/2018 | 04:30p | (Acct. Mgt.) Forwarding to vendor TCI requested. |
| KR | 9/26/2018 | 04:30p | ARACVENDID changed from to TCI |
| sys | 9/27/2018 | 10:18a | ARRELSTATUSID changed from VNDASG to VNDPLC |
| sys | 9/27/2018 | 10:18a | ARACVENPLACEDTE changed from to 09/27/2018 |
| sys | 10/2/2018 | 11:00a | ARRELSTATUSID changed from VNDPLC to VNDRCLREQ |
| sys | 10/2/2018 | 11:00a | (Acct. Mgt.) Action ARCHGPHASE: Phase changed from TERTIARY to QUATERNARY. |
| sys | 10/2/2018 | 11:00a | ARACVENDID changed from TCI to |
| sys | 10/2/2018 | 11:00a | ARACVENPLACEDTE changed from 09/27/2018 to |
| sys | 10/2/2018 | 11:02a | ARRELSTATUSID changed from VNDRCLREQ to VNDUNA |
| sys | 10/2/2018 | 11:02a | (Acct. Mgt.) Action FSPLCACCT: Successfully added placement request. |
| KR | 10/2/2018 | 11:17a | (Acct. Mgt.) Action ARCHGPHASE: Phase changed from QUATERNARY to TERTIARY. |
| KR | 10/2/2018 | 11:19a | (Acct. Mgt.) Action FSPLCACCT: Successfully added placement request. |
| KR | 10/2/2018 | 11:20a | ARRELSTATUSID changed from VNDUNA to VNDASG |
| KR | 10/2/2018 | 11:20a | (Acct. Mgt.) Forwarding to vendor GMC requested. |
| | | | |
| KR | 10/2/2018 | 11:20a | ARACVENDID changed from to GMC |
| sys | 10/2/2018 | 11:21a | ARRELSTATUSID changed from VNDASG to VNDPLC |
| sys | 10/2/2018 | 11:21a | ARACVENPLACEDTE changed from to 10/02/2018 |
| sys | 10/8/2018 | 09:04a | ARRELSTATUSID changed from VNDPLC to LITIGIOUS |
| sys | 10/8/2018 | 09:04a | Account moved due to Litigious code from agency being received |
| sys | 10/8/2018 | 09:04a | Action FSRCLACCT: Successfully added recall request for GMC. |
| sys | 10/8/2018 | 09:04a | (Acct. Mgt.) Action ARCHGPHASE: Phase changed from TERTIARY to QUATERNARY. |
| sys | 10/8/2018 | 09:04a | ARACVENDID changed from GMC to |
| sys | 10/8/2018 | 09:04a | ARACVENPLACEDTE changed from 10/02/2018 to |
| sys | 10/8/2018 | 09:04a | ARRELSTATUSID changed from LITIGIOUS to SALEPEND |
| sys | 10/8/2018 | 09:04a | Action ARCHGSTAT error: Failed to change status from VNDPLC to LITIGIOUS.  Follow-up date changed from 08/07/2018 to 10/08/2018. |
| sys | 10/8/2018 | 09:06a | (Acct. Mgt.) Action FSPLCACCT: Successfully added placement request. |
| sys | 10/8/2018 | 10:04a | ARRELSTATUSID changed from SALEPEND to LITIGIOUS |
| sys | 10/8/2018 | 10:04a | Account moved due to Litigious code from agency being received |
| | | | |
| sys | 10/8/2018 | 10:04a | Action FSRCLACCT error: Attempt to create the recall transaction has failed.  Reason - Account is not placed with a vendor. |
| sys | 10/8/2018 | 10:04a | ARRELSTATUSID changed from LITIGIOUS to SALEPEND |
| sys | 10/8/2018 | 10:04a | Action ARCHGSTAT error: Failed to change status from SALEPEND to LITIGIOUS. |
| JC | 4/21/2020 | 08:10a | Action ARCHGFOLDTE: The follow-up date has been changed from 10/08/2018 to 04/21/2020 |
| JC | 4/21/2020 | 08:10a | ARRELSTATUSID changed from SALEPEND to DISPUTEIH |
| JC | 4/21/2020 | 08:10a | Action FSRCLACCT error: Attempt to create the recall transaction has failed.  Reason - Account is not placed with a vendor. |
| JC | 4/21/2020 | 08:10a | (Acct. Mgt.) M2 consideration added |
| JC | 4/21/2020 | 08:10a | Account cannot be sold back because the sellback deadline has passed. |
| JC | 4/21/2020 | 08:10a | Account Disputed Status changed from <blank> to Y (MICHAEL J WOOD) |
| JC | 4/21/2020 | 08:10a | ZZACEOSCAR changed from to Y |
| NJ | 1/21/2021 | 12:27a | ZZACM2DELETE changed from N to Y |
| sys | 1/25/2021 | 06:17p | Report to Credit Bureaus changed from Y to N. |

# EXHIBIT

# 2

## Exhibit 8

# Compliance Condition Codes

The Compliance Condition Code (CCC), which is reported in Field 20 of the Base Segment, allows the reporting of a condition that is required for legal compliance.

Compliance Condition Codes are used to reflect accounts closed at consumer's request, and consumer disputes under the Fair Credit Billing Act (FCBA), the Fair Debt Collection Practices Act (FDCPA), or the direct dispute provisions of the Fair Credit Reporting Act (FCRA) and its implementing rules.

The Compliance Condition Codes should <u>not</u> be reported in response to a consumer dispute investigation request from the consumer reporting agencies, except where a data furnisher uses a Compliance Condition Code to satisfy its FDCPA obligation to communicate that a debt is disputed.

Report the following codes:

| Code | Description |
|---|---|
| Blank | Retains previously reported code, or no new Compliance Condition Code applies for this reporting period |
| XA | Account closed at consumer's request<br><br>*Definition: Reported when a consumer requested an account be closed.*<br><br>**Important Note:  Report the Date Closed as the date the account was closed to further purchases.** |
| XB | Account information has been disputed by the consumer directly to the data furnisher under the Fair Credit Reporting Act (FCRA); the data furnisher is conducting its investigation.<br><br>*Definition: Reported when the completeness or accuracy of the account information is disputed directly to the data furnisher by the consumer under the FCRA and investigation of the dispute is in progress by the data furnisher.*<br><br>*Code XB should be reported for FDCPA disputes.*<br><br>**Important Note: Code XB should no longer be reported after the investigation is completed; the XB should be removed by reporting the removal code or changed to another code.** |
| XC | FCRA direct dispute investigation completed — consumer disagrees with the results of the data furnisher's investigation.<br><br>*Definition: Reported when the investigation of an FCRA dispute made by the consumer directly to the data furnisher has been completed by the data furnisher; however, the consumer disagrees with the outcome of the investigation.* |

(continued)

 CREDIT REPORTING RESOURCE GUIDE®

*Copyright 2020 © Consumer Data Industry Association*

# Exhibit 8

# Compliance Condition Codes

| Code | Description |
|------|-------------|
| XD | Account closed at consumer's request; and account information disputed by the consumer directly to the data furnisher under the FCRA; the data furnisher is conducting its investigation.<br><br>*Definition: Combination code reported when two conditions (XA and XB) apply to the account. A consumer requested an account be closed and the completeness or accuracy of the account information is disputed directly to the data furnisher by the consumer under the FCRA and investigation of the dispute is in progress by the data furnisher.*<br><br>**Important Notes: Report the Date Closed as the date the account was closed to further purchases.**<br><br>**Code XD should no longer be reported after the investigation is completed; the XD should be changed to another code, such as XA or XE, if applicable.** |
| XE | Account closed at consumer's request; and data furnisher has completed its investigation; consumer disagrees with the results of the investigation. (To be used for direct disputes under the FCRA or FCBA disputes)<br><br>*Definition: Combination code reported when two conditions (XA and XC or XG) apply to the account. A consumer requested an account be closed and the investigation of the dispute has been completed by the data furnisher; however, the consumer disagrees with the outcome of the investigation.*<br><br>**Important Note: Report the Date Closed as the date the account was closed to further purchases.** |
| XF | Account in dispute under Fair Credit Billing Act (FCBA); the data furnisher is conducting its investigation.<br><br>*Definition: Reported when information is disputed by the consumer under the FCBA and investigation of the dispute is in progress by the data furnisher.*<br><br>**Important Note: Code XF should no longer be reported after the investigation is completed; the XF should be removed by reporting the removal code or changed to another code.** |
| XG | FCBA dispute investigation completed — consumer disagrees with the results of the data furnisher's investigation.<br><br>*Definition: Reported when the investigation of an FCBA dispute has been completed by the data furnisher; however, the consumer disagrees with the outcome of the investigation.* |

(continued)

# Exhibit 8

# Compliance Condition Codes

| Code | Description |
|------|-------------|
| XH | Account previously in dispute; the data furnisher has completed its investigation. (To be used for direct disputes under the FCRA, FDCPA disputes or FCBA disputes)<br><br>*Definition: Reported when the investigation of a dispute by the data furnisher was completed.* |
| XJ | Account closed at consumer's request; and account information disputed by the consumer under FCBA; the data furnisher is conducting its investigation.<br><br>*Definition: Combination code reported when two conditions (XA and XF) apply to the account. A consumer requested an account be closed and information is disputed by the consumer under the FCBA and investigation of the dispute is in progress by the data furnisher.*<br><br>**Important Notes: Report the Date Closed as the date the account was closed to further purchases.**<br><br>**Code XJ should no longer be reported after the investigation is completed; the XJ should be changed to another code, such as XA or XE, if applicable.** |
| XR | Removes the most recently reported Compliance Condition Code<br><br>**Important Note: Do not use XR as a default code. If no Compliance Condition Code applies in the current reporting period, blank fill this field.** |

**Important Note:**

**When a dispute investigation is completed, it is important to delete the previously-reported Compliance Condition Code or to update the Compliance Condition Code to show that the investigation has been completed. Your internal policies and procedures should indicate which option your company prefers to use; and if you choose to report a code indicating that the investigation has been completed, how long to retain the code on the consumer's file.**

(continued)

CREDIT REPORTING RESOURCE GUIDE®

*Copyright 2020 © Consumer Data Industry Association*

# Exhibit 8

# Compliance Condition Codes

The code should be reported each month as long as the condition applies.

| Date of Account Information | CCC | Action |
|---|---|---|
| 09/15/2019 | XA | XA is added to file. |
| 10/15/2019 | XA | XA is retained. |
| 11/15/2019 | XA | XA is retained. |
| 12/15/2019 | Blank | XA is retained. |
| 01/15/2020 | XD | XA is replaced with XD. |
| 02/15/2020 | XD | XD is retained. |
| 03/15/2020 | XA | XD is replaced with XA. |

As an option, the code should be reported one time and will be deleted only when another Compliance Condition Code or the **XR** (Removal code) is reported.  Example:

| Date of Account Information | CCC | Action |
|---|---|---|
| 09/15/2019 | XA | XA is added to file. |
| 10/15/2019 | Blank | XA is retained. |
| 11/15/2019 | Blank | XA is retained. |
| 12/15/2019 | Blank | XA is retained. |
| 01/15/2020 | XD | XA is replaced with XD. |
| 02/15/2020 | Blank | XD is retained. |
| 03/15/2020 | XA | XD is replaced with XA. |

**Note: Regardless of the method of reporting, the code will be deleted *only* when another Compliance Condition Code or the XR (Removal code) is reported.**

*Copyright 2020 © Consumer Data Industry Association*

# EXHIBIT

# 3

# ACCOUNT PURCHASE AGREEMENT

## DATED AND EFFECTIVE AS OF JULY 25, 2018

## BY AND BETWEEN

SELLER: Pentagon Federal Credit Union

AND

BUYER: Security Credit Services, LLC

| | |
|---|---|
| CLOSING DATE: | July 30, 2018 |
| CUT-OFF DATE: | July 10, 2018 |
| LOT NO.: | Lot 799 |
| PURCHASE PRICE: | ███████ |
| TOTAL BALANCE DUE SELLER: | ███████ |

Payable in full by: **July 30, 2018**

**<ins>SCHEDULE OF EXHIBITS</ins>**

EXHIBIT I:          Account Schedule

EXHIBIT II:         Bill of Sale

EXHIBIT III:        Closing Statement

EXHBIIT IV:         Wire Transfer Instructions

EXHIBIT V:          Account Level Affidavit

EXHIBIT VI:         Original Debt Sale Affidavit

EXHIBIT VII:        Repurchase Price Percentage Schedule

## ACCOUNT PURCHASE AGREEMENT

THIS ACCOUNT PURCHASE AGREEMENT ("Agreement") is dated as of July 25, 2018 (the **"Effective Date"**), between Pentagon Federal Credit Union, a federally chartered credit union ("Seller") Security Credit Services, LLC a Mississippi limited liability company ("Buyer") and National Loan Exchange, Inc. ("Facilitator").

Seller, in the normal course of its business, extends credit, pursuant to which accounts are established for its customers. Seller, from time-to-time, charges off accounts that become delinquent. Buyer desires to purchase such accounts from Seller on the terms and conditions of this Agreement. Facilitator will facilitate the transactions pursuant to the terms of the Loan Sale Advisory Agreement dated March 30, 2018.

The parties therefore agree as follows:

## ARTICLE I
## DEFINITIONS

For purposes of this Agreement, the following terms shall have the meanings indicated:

**"Account Data File"** means the electronic data file (e.g. Microsoft Excel file) describing with specificity each of the Accounts, which includes, at minimum, the following data fields: charged-off date, date of first delinquency, total balance at charge-off, default date, last-pay date, last pay amount, total of payments made post charge-off, original creditor name (if applicable), post-charge off interest and fees and other posted adjustments, account number at charge-off, Customer's first and last name, and address at charge-off or last known address, Customers' social security number , co makers' social security number, first and last name, address at charge off or last known address, Customer's and co-makers' employment information (name and number), and all available Customer and co-maker email addresses.

**"Account Document(s)"** means the charge off billing statement and the 12 monthly billing statements prior to charge off for each Account sold hereunder and, where available, copies of authorization forms on Accounts sold hereunder.



**"Account Schedule"** means the schedule describing the Accounts purchased under this Agreement attached as Exhibit I hereto, including the Account Data File describing with specific detail each of the Accounts made the subject of this Agreement.

**"Accounts"** means certain of Seller's credit card accounts, that are the subject of this Agreement and which are more fully described on the Account Schedule.



"**Applicable Laws**" means any law, ordinance, statute, treaty, rule, judgment, consent order, regulation or other determination or finding of any arbitrator or governmental authority applicable to or binding upon such party or to which such party is subject, whether federal, state, county, local or otherwise (including, without limitation, and as applicable, all usury laws, the Federal Truth-In-Lending Act, the Fair Debt Collection Practices Act, the Federal Equal Credit Opportunity Act, the Servicemembers Civil Relief Act, Telephone Consumer Protection Act, the Fair Credit Reporting Act, the National Bank Act, Gramm-Leach-Bliley Act, the USA PATRIOT Act, the Sarbanes-Oxley Act, and Regulations, B, E, P and Z of the Board of Governors of the Federal Reserve System and the Consumer Financial Protection Act of 2010 (known as the Dodd-Frank Act).

███████████████████████████

"**Ineligible Account**" means an Account for which at least one of the following criteria exists on or prior to the Cut-Off Date with respect to (i)-(xi) below, or anytime up to three years after the Closing Date with respect to xii:

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

v.      the Account does not comply in any material aspect with any other representation and warranty of Seller as set forth in this Agreement; or

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

xiii.    The Account is involved in an unresolved dispute with the Seller.

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████



"**Transfer Documents**" means the Bill of Sale attached in the form of Exhibit II of this Agreement and such other documents, as Seller, in its sole and absolute discretion, deems appropriate for the transfer of its right, title and interest in and to the Accounts purchased by Buyer pursuant to this Agreement.



## ARTICLE II
## PURCHASE OF THE ACCOUNTS

2.1. *Agreement to Sell and Purchase Accounts.* On the Closing Date, Seller shall sell 100% of eligible Accounts and Buyer shall buy all right, title and interest in and to the Accounts. Seller agrees to sell the Accounts to Buyer and Buyer agrees to purchase the Accounts, without recourse and without warranty of any kind except as provided in this Agreement. Concurrently with Seller's receipt of the Purchase Price, Seller, and Buyer as applicable, shall execute and deliver (or cause to be executed and delivered) to Buyer for the Accounts: (a) the Transfer Documents, duly executed by Seller; and (b) such other documents as Seller may reasonably require to effectuate the transfer of Accounts.



**ARTICLE III**
**ACCOUNT DOCUMENTS**

3.1. ***Account Documents.*** Seller shall, within 60 days after the Closing Date, deliver Account Documents for the Accounts sold hereunder at no additional cost to Buyer. The Account Documents shall be provided in electronic format unless otherwise agreed in writing between Buyer and Seller.



DocuSign Envelope ID: 117DD98E-B058-4189-BF67-39FBE4E054EE

## ARTICLE IV
## SERVICING AND COLLECTION ACTIVITIES





9

DocuSign Envelope ID: 117DD09E-B0FB-4169-BF67-39FBE4E054E6



**ARTICLE V**
**ACCOUNT RECALL**

DocuSign Envelope ID: 417DD9BE-B0F8-4189-BF67-39EBE4E054EE



## ARTICLE VI
## NO RIGHT OF REPURCHASE

## ARTICLE VII
## BUYER'S REPRESENTATIONS AND WARRANTIES

DocuSign Envelope ID: 117DB9B5-B0FB-4189-BF67-39FBE4E054EE

**ARTICLE VIII**
**SELLER'S REPRESENTATIONS AND WARRANTIES**



  8.3. ***Compliance with Law.*** *Each* Account has been originated, maintained and serviced in full compliance with Applicable Laws.



  8.5. ***No Material Omissions***. Seller has not omitted any material information relating to the Accounts of which Seller has actual knowledge, which omission would adversely affect Buyer's ability to seek recovery on the Accounts in the normal course of business.



  8.8. ***Ineligible Accounts***. Seller has used commercially reasonable efforts to remove all Ineligible Accounts from the Account Schedule.

  8.9. ***Accuracy of Information.*** All of the information contained in the Account Schedule and any other information Seller provides to Buyer regarding the Accounts is true, complete, accurate and not misleading in any material respect as of the Closing Date.

## ARTICLE IX
## ACKNOWLEDGEMENT OF RISKS



## ARTICLE X
## INDEMNIFICATION





**ARTICLE XI**
**RESALE**

DocuSign Envelope ID: 117DD9B5-B0FB-4169-BF67-39EBE4E054EE



## ARTICLE XII
## REPURCHASE OF INELIGIBLE ACCOUNTS





**ARTICLE XIII**
**MONITORING**

**ARTICLE XIV**
**INFORMATIONAL TAX REPORTING**

**ARTICLE XV**
**WAIVER AND RELEASE**

**ARTICLE XVI**
**DATA SECURITY**



**ARTICLE XVII**
**MISCELLANEOUS PROVISIONS**



17.7. *Governing Law/Choice of Forum.* This Agreement shall be construed, and the rights and obligations of Seller and Buyer hereunder determined, in accordance with the laws of the Commonwealth

DocuSign Envelope ID: 17D209E-B0F9-4369-BF67-39EBE4E054EE

of Virginia. The parties agree that any legal actions between Buyer and Seller regarding the purchase of the Accounts hereunder shall be originated in the district court in and for the state in the county where Seller is located, subject to any rights of removal Seller may have, and Buyer hereby consents to the jurisdiction of said court in connection with any action or proceeding initiated concerning this Agreement and agrees that service by mail to the address specified in Section 17.1 of this Agreement, shall be sufficient to confer jurisdiction over Buyer in such state court.



*Signature page to follow.*

The parties are signing this Agreement as of the Effective Date.

BUYER: Security Credit Services, LLC

By: _____

Name (print):  Kaye Dreifuerst

Title:  president


SELLER:  Pentagon Federal Credit Union

By: _____

Name (print):  Sumeet Mulla

Title: Chief Credit Risk Officer

FACILITATOR:  National Loan Exchange, Inc.

By: _____

Name (print): _____

Title: _____

*Signature page for Account Purchase Agreement dated July 25, 2018.*

DocuSign Envelope ID: 117DD9BE-B0FB-4169-BF67-39FBE4E064EE

**EXHIBIT I**

ACCOUNT SCHEDULE

Lot No. 799



| Seller Name | Type of Account | Number of Accounts | Unpaid Balance | Purchase Percentage (%) | Cut-off Date |
|---|---|---|---|---|---|
| Pentagon Federal Credit Union | Charged Off Credit Card Accounts | | | | |

AN ELECTRONIC ACCOUNT DATA FILE TITLED LOT799FINALDATA.XLS CONTAINING DETAILED ACCOUNT INFORMATION WILL BE PROVIDED TO BUYER ON THE CLOSING DATE.

DocuSign Envelope ID: 417DD9BE-B0F8-4169-BF67-39FBE4E054EE

**EXHIBIT III**

**CLOSING STATEMENT**



**EXHIBIT IV**

Wire Instructions



**EXHIBIT V**

AFFIDAVIT OF SALE OF ACCOUNT BY DEBT SELLER



DocuSign Envelope ID: 417DD9BE-B0E8-4169-BF67-39EBE4E054EE



**Exhibit VI**

ORIGINAL DEBT SALE AFFIDAVIT



DocuSign Envelope ID: 117DD88E-B0FB-4169-BF67-39FBE4E054EE



DocuSign Envelope ID: 117DD9BE-B0EB-4169-BE67-39FBE4E054EE

**Exhibit VII**

**Repurchase Price Percentage Schedule**



# EXHIBIT

# 4

```
06061050120201948000147003O            003119497                    O4808012018000000000000015325001
0000000000000000093 GGGGGGGGGGGGGGGGGGGGGGBBBB   XB00001532500001532500000000000501202001172014000000012132013
                    WOOD                    MICHAEL          J
     0043    197631295200901Q    4555 N KOSTNER AVE                                  CHICAGO
     IL606304109  K1PENTAGON FEDERAL CREDIT UNION 08N1MOTOROLA INC.
```