UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL WOOD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 20 C 2369 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| SECURITY CREDIT SERVICES, LLC, d/b/a ) | |
| EQUIPRO INVESTMENTS, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Michael Wood brings this action against Security Credit Services, LLC ("SCS") under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, alleging that SCS violated Section 1692e(8) when it reported his debt to the national credit reporting agencies but failed to also notify them that Wood disputed the debt. The parties have filed cross-motions for summary judgment. Because Wood cannot establish that SCS knew or should have known that he disputed the debt, Wood cannot prevail on his FDCPA claim, and the Court enters summary judgment for SCS against Wood.

**BACKGROUND**[1]

Wood held a credit card with Pentagon Federal Credit Union ("PenFed") and incurred a credit card debt. On April 26, 2017, Wood, through his attorney, sent PenFed a letter disputing the debt. Wood disputed the debt because "it was higher than what he remembered it could have been, as the credit limit was substantially lower than the amount sought for the [debt]." Doc.

---

[1] The Court derives the facts set forth in this section from the statements of fact submitted by the parties to the extent they comport with Local Rule 56.1. The Court takes these facts in the light most favorable to the non-movant in each motion. The Court has considered the parties' objections to the statements of fact and supporting exhibits and included in this background section only those portions of the statements and responses that are appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment.

101-3 at 4. On May 16, 2017, PenFed sent Wood's attorney a letter stating that "[a] review of our records for the account listed above indicates that the delinquency in question is valid and will not be removed [from Wood's credit report]." Doc. 101-2 at 94. Neither Wood nor his attorney responded to the May 16 letter.

PenFed uses the Metro 2 Format, which was developed by the Consumer Data Industry Association, for reporting debts to the national credit reporting agencies. After PenFed determined that Wood's debt was valid, and because it did not receive a response to its May 16 letter, PenFed reported the "XH" Metro 2 code for Wood's debt. PenFed uses the XH code when a debtor previously disputed a debt but the debt collector's investigation resolved the dispute. At no point did PenFed report any other Metro 2 code with respect to Wood's debt, including "XB," which signifies that a consumer disputes the debt, or "XC," which reflects that the creditor completed its investigation of a consumer's dispute but the consumer disagrees with the results.

On July 30, 2018, PenFed sold a collection of charged-off debts, including Wood's debt, to SCS, a debt collector as defined by the FDCPA. In connection with the sale, PenFed and SCS entered into a purchase agreement dated July 25, 2018. The purchase agreement contained representations and warranties, including: "(1) that PenFed used commercially reasonable efforts to remove from the pool of accounts being purchased accounts with 'unresolved disputes'; (2) that every account being purchased had been maintained and serviced in full compliance with the FCRA; and (3) that PenFed had not omitted any material information relating to the accounts being purchased of which PenFed had actual knowledge, which omission would adversely affect SCS' ability to seek recovery on the accounts." Doc. 101 ¶ 18. The agreement provided that debts with unresolved disputes were not eligible for inclusion in the sale. The agreement did not

define the term "unresolved dispute," and the parties disagree about whether Wood's dispute was resolved. But both SCS and PenFed understood the term to "cover[] accounts for which a dispute investigation has not yet been completed by PenFed as well as accounts where the accountholder disagrees with the results of PenFed's investigation." Doc. 101 ¶ 22.

PenFed did not provide SCS with any historic credit reporting information about the debts or with copies of Wood's April 26 dispute letter and PenFed's May 16 response. After the sale, SCS reported Wood's debt to the national credit reporting agencies but did not indicate that the debt was disputed. After Wood filed this lawsuit, SCS reported the debt using code "XB." Wood lost sleep on April 13, 2020, when he saw the inaccuracy for the first time, and on the following four nights because he was worried it would negatively impact his creditworthiness and prevent him from buying a house.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P.

56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted). The same standard applies when considering cross-motions for summary judgment. *Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002). Therefore, when considering SCS' motion for summary judgment, the Court views all evidence in the light most favorable to Wood, and when considering Wood's motion for summary judgment, the Court views all evidence in the light most favorable to SCS. *Id.*

## ANALYSIS

**I.    Article III Standing**

"Standing is a threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action." *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016) (quoting *Freedom From Religion Found., Inc. v. Zielke*, 845 F.2d 1463, 1467 (7th Cir. 1988)). Standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). At the summary judgment stage, "the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit

4

or other evidence 'specific facts'" supporting each element of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). SCS argues that Wood lacks an injury-in-fact sufficient to confer Article III standing.

In *Spokeo*, the Supreme Court held that "Article III standing requires a concrete injury even in the context of a statutory violation." 578 U.S. at 341; *see also Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017) (no standing for "a statutory violation completely removed from any concrete harm or appreciable risk of harm"). Regardless of the nature of the FDCPA violation (procedural or substantive), a plaintiff "must allege (and later establish) that the statutory violation harmed him 'or presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect.'" *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1066 (7th Cir. 2020) (quoting *Casillas v. Madison Ave. Assoc., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019)).

In *Ewing v. Med-1 Solutions, LLC*, 24 F.4th 1146 (7th Cir. 2022), the Seventh Circuit, relying on the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), likened the injury caused by violating Section 1692e(8) to the injury caused by defamation. 24 F.4th at 1153. As here, in *Ewing*, consumers complained that although they submitted disputes, the debt collector defendants failed to report their disputes to the credit reporting agencies. *Id.* The court held that the consumers had standing because they had "shown publication here through their evidence of third-party dissemination [to the credit reporting agencies]." *Id.* The court stated that "[b]ecause the Consumers demonstrated third-party dissemination, their appeals do not implicate the [Supreme] Court's reference to a general requirement that defamatory content is read, not merely processed," and that "[t]o require more of the Consumers would . . . erode *TransUnion*'s holding that evidence of dissemination to a third party is sufficient to show

5

publication." *Id.* at 1154. Nonetheless, to show publication, the consumer still must show that "the third party [understood] the defamatory nature of the communication." *Id.* The court found that the consumers had shown that the credit reporting agency "understood the significance of the reports," because it "included the debts in the Consumers' credit reports; [the credit reporting agency] would have included the disputes too had the Debt Collectors communicated them. And the Consumers submitted evidence that [the credit reporting agency's] assessment of their creditworthiness took into account whether a debt was disputed or not." *Id.*

Wood argues that his case is on all fours with *Ewing* and thus he need not allege any injury beyond SCS publishing inaccurate information to the credit reporting agencies. SCS attempts to distinguish *Ewing*, arguing that Wood has failed to establish that the credit reporting agencies in this case understood the defamatory nature of the information because the record does not show that his credit score was damaged. *Id.* at 1153–54 ("In assessing the Consumers' injury, we focus on the question of publication because an unpublished statement, even if false and defamatory, is not injurious . . . . The essential point, one that has always been necessary to prove publication, is this: the third party must understand the defamatory nature of the communication."). But the Court does not read *Ewing* as requiring damage to Wood's credit score. Rather, SCS communicating the inaccurate information alone supports that Wood "suffered an intangible, reputational injury" that is sufficiently concrete for purposes of Article III standing. *Id.*; *see also Thomas v. LVNV Funding, LLC*, --- F. Supp. 3d ----, 2022 WL 17093386, at *3 (N.D. Ill. Nov. 21, 2022) (interpreting *Ewing* as holding that "plaintiff's constitutional standing does not depend on proof of damage to her credit score"). Therefore, the Court finds that Wood has established Article III standing.[2]

---

[2] SCS also argues that the Court should modify the Seventh Circuit's holding in *Ewing* such that a violation of Section 1692e(8) is only analogous to defamation if the underlying dispute is meritorious.

**II.     Section 1692e(8)**

To establish a claim under the FDCPA, Wood must prove that (1) SCS qualifies as a "debt collector" as defined in § 1692a(6), (2) SCS took the actions of which Wood complains "in connection with the collection of any debt," and (3) the actions violated one of the FDCPA's substantive provisions. *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010) (citation omitted) (internal quotation marks omitted). For purposes of the present motions, SCS does not dispute that it is a debt collector and that its actions were in connection with the collection of a debt. Thus, the only element at issue is whether SCS' failure to report Wood's debt as disputed violated a provision of the FDCPA. Wood contends that SCS violated Section 1692e(8) of the FDCPA when it reported his debt to the national credit reporting agencies but did not report that Wood disputed the debt. Because the record does not support an inference that SCS knew or should have known that the debt was disputed, the Court grants summary judgment for SCS.

Section 1692e(8) of the FDCPA prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). Wood argues that SCS should have known that the pool of debts it purchased from PenFed would include disputed debts, like Wood's debt. SCS argues, however, that after Wood failed to respond to PenFed's May 16 letter, his debt was no longer disputed under the FDCPA,

---

SCS argues that "an unmeritorious dispute does not bear a sufficiently close relationship to the traditional tort of defamation to qualify for Article III standing" because a "'person does not have a legally protected right to a reputation based on the concealment of the truth.'" Doc. 113-1 at 14 (quoting *Glob. Relief Found., Inc. v. New York Times Co.*, 390 F.3d 973, 989 (7th Cir. 2004). As SCS notes, however, the Court must follow the Seventh Circuit's holding in *Ewing* and thus the Court need not address this argument further. *See Donohoe v. Consol. Operating & Prod. Corp.*, 30 F.3d 907, 910 (7th Cir. 1994) ("When matters are decided by an appellate court, its rulings, unless reversed by it or by a superior court, bind the lower court." (quoting *Insurance Group Comm. V. Denver & R.G. W. R.R.*, 329 U.S. 607, 612 (1947)).

7

and that even if it was, SCS had no reason to know it was disputed based on the representations and warranties it received from PenFed in the purchase agreement.

In connection with the sale of a pool of its accounts to SCS, PenFed represented "(1) that PenFed used commercially reasonable efforts to remove from the pool of accounts being purchased accounts with 'unresolved disputes'; (2) that every account being purchased had been maintained and serviced in full compliance with the FCRA; and (3) that PenFed had not omitted any material information relating to the accounts being purchased of which PenFed had actual knowledge, which omission would adversely affect SCS' ability to seek recovery on the accounts." Doc. 101 ¶ 18. Although not explicitly defined in the purchase agreement, SCS and PenFed both understood "unresolved disputes" to cover "accounts for which a dispute investigation has not yet been completed by PenFed as well as accounts where the accountholder disagrees with the results of PenFed's investigation." *Id.* ¶ 22. Although Wood clearly disputes the debt, as evidenced by his filing this lawsuit, the relevant question is whether SCS should have known that Wood continued to dispute the debt after receiving PenFed's May 16 letter.

Wood correctly points out that under Seventh Circuit precedent, "Section 1692e(8) does not require an individual's dispute be valid or even reasonable. Instead, the plaintiff must simply make clear that he or she disputes the debt." *Evans v. Portfolio Recovery Assoc., LLC*, 889 F.3d 337, 347 (7th Cir. 2018). While true that Wood initially disputed the debt, Wood cites no cases, nor has the Court found any, that hold that once a debtor disputes a debt, the debt collector's obligation to report a debt as disputed lasts indefinitely. Rather, the Court finds persuasive the reasoning in *Foster v. AFNI, Inc.*, No. 2:18-CV-12340-TGB, 2020 WL 1531651 (E.D. Mich. Mar. 31, 2020) that when a debt collector investigates a dispute and communicates the results to the consumer, the dispute is resolved unless the consumer indicates that it disagrees with the

8

results. In *Foster*, after receiving notice of a debt, the consumer sent the debt collector a letter disputing the debt. *Id.* at *1. The debt collector reported the dispute using the "XB" code, investigated the dispute, determined that the debt was valid, and sent the consumer a letter relaying the results of its investigation. *Id.* The consumer did not respond to this letter or otherwise communicate that she continued to dispute the debt. Thus, the debt collector reported the debt using the "XH" code, which states "[a]ccount previously in dispute; the data furnisher has completed its investigation." *Id.* at *2, 6. The court found no violation of Section 1692e(8) because the consumer failed to respond to the debt collector's letter verifying the debt. *Id.* at *8 ("Based on the above, the Court finds that the only reasonable interpretation that the 'least sophisticated consumer' could reach after receiving a letter from a debt collector confirming that the consumer owed the debt would be to realize that the collector believed the debt was valid, and that if the consumer disagreed, she should respond by reaffirming her dispute of the debt and the reasons for disputing it."). In other words, the debt collector had no reason to know that the consumer still disputed the debt after it communicated the results of its investigation to her and received no response. *Id.* Similarly, here, Wood failed to respond to PenFed's May 16 letter, which PenFed reasonably took to mean Wood no longer disputed the debt. PenFed thus reported the debt using code "XH," indicating that Wood previously disputed the debt but that PenFed's investigation resolved the dispute. At that point, no ongoing dispute existed, and so at the time SCS purchased the debt from PenFed, it had no reason to know that Wood continued to dispute his debt. *See id.*

The Seventh Circuit cases Wood cites do not compel a different result. *See Evans*, 889 F.3d at 347; *Centeno v. LVNV Funding, LLC*, Case Nos. 17 C 5233, 17 C 5693, 17 C 5897, 17 C 6098, 2019 WL 2173779 (N.D. Ill. May 20, 2019). In *Evans*, the court addressed four

9

consolidated cases alleging violations of Section 1692e(8). 889 F.3d at 342. In each case, the consumers sent letters to the debt collector disputing their debts, but despite receiving these letters, the debt collector failed to respond to the letters or report the debts as disputed. *Id.* at 342–43. To justify its clear Section 1692e(8) violations, the debt collector argued that it did not have to report the disputes because "'[t]he record shows that these plaintiffs owed the debts and the amounts stated were accurate.'" *Id.* at 346. In other words, because the debts were valid, no dispute could exist. The court disagreed and held that to implicate Section 1692e(8), disputes need not "be valid or even reasonable" and "the plaintiff must simply make clear that he or she disputes the debt." *Id.* at 347; *see also Centeno*, 2019 WL 2173779, at *4 (noting that defendant raised the same "argument dismissed by the *Evans* court" that debt collectors need not report a dispute where "the record does not show any actual disputes concerning the debt"). Unlike PenFed, the debt collectors in *Evans* and *Centeno* did not communicate the results of their investigations, if any, to the consumers, meaning the consumers never had a chance to indicate whether they continued to dispute the debt even in the face of the investigation. Rather, the debt collectors simply attempted after the fact to justify their failure to report the disputes by claiming that the debts were valid and thus that they never had an obligation to report the disputes. *See Foster*, 2020 WL 1531651, at *8 (collecting cases "where district courts have found a § 1692e(8) violation where the debt collector attempted to defend its failure to report a dispute by claiming that the dispute was not valid" and noting that "in each case in this posture, the debt collector failed to report the debt as disputed from the outset and attempted to retroactively defend a clear § 1692e(8) violation by claiming the debt was valid."). Unlike here or in *Foster*, the debts remained disputed and so the failure to report them violated Section 1692e(8). *Cf. id.* (rejecting plaintiff's "position that a consumer does not need to dispute the results of a debt collector's

10

investigation to show that she continues to contest the debt for purposes of a § 1692e(8) claim" and finding instead that the defendant did not violate Section 1692e(8) by reporting that the plaintiff's debt was previously in dispute and the investigation had been completed where the plaintiff did not indicate she continued to dispute the debt after receiving notice of the defendant's investigation).

In summary, after investigating the dispute, PenFed sent Wood a letter stating that it found the debt to be valid. Wood did not respond. PenFed thus reasonably understood Wood's silence as indicating that he no longer disputed the debt or that the investigation resolved the dispute to his satisfaction. *Id*. This relieved PenFed from any obligation to report an ongoing dispute. *See* 16 U.S.C. § 1692e(8) (a debt collector must report a dispute when it "know[s] or should [know] . . . that a disputed debt *is* disputed" (emphasis added)); *see also Evans*, 889 F.3d at 347 (debt collector must report dispute when consumer "make[s] clear that he or she disputes the debt"). And because no dispute remained once Wood failed to respond to the May 16 letter, PenFed did not need to communicate anything about the dispute to SCS because the dispute was resolved. Thus, PenFed appropriately included Wood's debt in the pool of debts, and no reason exists for SCS to have known about the resolved dispute. Wood, therefore, cannot establish that SCS knew or should have known that he still disputed the debt, and so the Court grants SCS' motion for summary judgment.[3]

---

[3] SCS also argues that it is entitled to summary judgment on Wood's Section 1692e(8) claim because any violation was the result of a bona fide error. SCS further argues that Wood has not established actual damages. Because the Court finds that Wood cannot establish an FDCPA violation, the Court does not address SCS' remaining arguments for summary judgment.

**CONCLUSION**

For the foregoing reasons, the Court grants SCS' motion for summary judgment [99] and denies Wood's motion for summary judgment [113]. The Court enters judgment for SCS on Wood's second amended complaint. Case terminated.

Dated: May 23, 2023

                                                                SARA L. ELLIS
                                                                United States District Judge