UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL WOOD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 20 C 2369 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| SECURITY CREDIT SERVICES, LLC, d/b/a ) | |
| EQUIPRO INVESTMENTS, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Michael Wood brings this action against Security Credit Services, LLC ("SCS") under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, alleging that SCS violated Section 1692e(8) when it reported his debt to the national credit reporting agencies but failed to also notify them that Wood disputed the debt. The parties filed cross-motions for summary judgment. The Court previously found that Wood cannot prevail on his FDCPA violation because Wood cannot establish that SCS knew or should have known that he still disputed his debt, Doc. 127, but the Seventh Circuit reversed that decision and remanded the case for further proceedings, *Wood v. Sec. Credit Servs., LLC*, 126 F.4th 1303 (7th Cir. 2025), *reh'g denied*, No. 23-2071, 2025 WL 462078 (7th Cir. Feb. 11, 2025). With the case having returned to the Court, the Court turns to the remaining unresolved issue from the parties' summary judgment motions: whether Wood can establish actual damages. Because Wood has not offered sufficient evidence to establish any actual damages, the Court grants SCS' motion for summary judgment on this issue.

# BACKGROUND[1]

## I.    Facts

Wood held a credit card with Pentagon Federal Credit Union ("PenFed") and incurred a credit card debt. On April 26, 2017, Wood, through his attorney, sent PenFed a letter disputing the debt. Wood disputed the debt because "it was higher than what he remembered it could have been, as the credit limit was substantially lower than the amount sought for the [debt]." Doc. 101-3 at 4. On May 16, 2017, PenFed sent Wood's attorney a letter stating that "[a] review of our records for the account listed above indicates that the delinquency in question is valid and will not be removed [from Wood's credit report]." Doc. 101-2 at 94. Neither Wood nor his attorney responded to the May 16 letter.

PenFed uses the Metro 2 Format, which the Consumer Data Industry Association developed, for reporting debts to the national credit reporting agencies. After PenFed determined that Wood's debt was valid, and because it did not receive a response to its May 16 letter, PenFed reported the "XH" Metro 2 code for Wood's debt. PenFed uses the XH code when a debtor previously disputed a debt but an investigation resolved the dispute. At no point did PenFed report any other Metro 2 code with respect to Wood's debt, including "XB," which signifies that a consumer disputes the debt, or "XC," which reflects that the creditor completed its investigation of a consumer's dispute, but the consumer disagrees with the results.

On July 30, 2018, PenFed sold a collection of charged-off debts, including Wood's debt, to SCS, a debt collector as defined by the FDCPA. In connection with the sale, PenFed and SCS

---

[1] The Court repeats the facts set forth in its original decision, Doc. 127 at 1–3, with slight alterations and additions after appeal. The Court derives these facts from the statements of fact submitted by the parties to the extent they comport with Local Rule 56.1. The Court takes the facts in the light most favorable to the non-movant, Wood. The Court has considered the parties' objections to the statements of fact and supporting exhibits and included in this background section only those portions of the statements and responses that are appropriately presented, supported, and relevant to resolution of the only outstanding issue in the pending motion for summary judgment.

entered into a purchase agreement dated July 25, 2018. The purchase agreement contained representations and warranties, including: "(1) that PenFed used commercially reasonable efforts to remove from the pool of accounts being purchased accounts with 'unresolved disputes'; (2) that every account being purchased had been maintained and serviced in full compliance with the FCRA; and (3) that PenFed had not omitted any material information relating to the accounts being purchased of which PenFed had actual knowledge, which omission would adversely affect SCS' ability to seek recovery on the accounts." Doc. 101 ¶ 18.

The agreement provided that debts with unresolved disputes were not eligible for inclusion in the sale. The agreement did not define the term "unresolved dispute," and the parties disagree about whether Wood's dispute was resolved. At least PenFed understood the term to "cover[] accounts for which a dispute investigation has not yet been completed by PenFed as well as accounts where the accountholder disagrees with the results of PenFed's investigation." Doc. 101 ¶ 22. Though testimony from SCS' corporate representative indicates that SCS shared PenFed's definition of "unresolved dispute," the company's written policies evince that it reports debts as disputed regardless of investigation results.

PenFed did not provide SCS with any historic credit reporting information about the debts or with copies of Wood's April 26 dispute letter and PenFed's May 16 response. After the sale, SCS reported Wood's debt to the national credit reporting agencies but did not indicate that Wood disputed the debt. Wood lost sleep on April 13, 2020, when he accessed his Equifax credit report and saw the inaccuracy for the first time, and on the following four nights because he was worried it would negatively impact his creditworthiness and prevent him from buying a house. After Wood filed this lawsuit on April 13, 2020, SCS reported the debt using code "XB" no later than May 1, 2020.

## II. Relevant Procedural History

The parties filed cross-motions for summary judgment, disputing whether (1) Wood had standing to pursue his FDCPA claim, (2) SCS violated the FDCPA because it knew or should have known that Wood disputed the debt, (3) any violation was a result of a bona fide error, and (4) Wood can establish actual damages. The Court held that Wood has standing to pursue his FDCPA claim but found that because no dispute remained once Wood failed to respond to the May 16 letter, PenFed appropriately included Wood's debt in the pool of "undisputed" debts, and SCS had no reason to know about the resolved dispute. Accordingly, the Court entered judgment for SCS and terminated the case without discussing SCS' bona fide error defense or Wood's actual damages. *See* Doc. 127.

Wood filed an appeal of the Court's summary judgment opinion. In its January 28, 2025 opinion, the Seventh Circuit agreed with this Court that Wood has standing to pursue his FDCPA claim but held that a genuine issue of material fact—SCS' understanding of what makes an account "disputed"—precludes summary judgment on both Wood's affirmative FDCPA case and SCS' bona fide error defense. *See Wood*, 126 F.4th 1303. As the parties confirmed to the Court, the only outstanding issue for this Court to decide on the parties' previously filed summary judgment motions, therefore, is whether Wood can establish actual damages under 15 U.S.C. § 1692k(a)(1).

## LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to

4

interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

## ANALYSIS

The FDCPA allows a plaintiff to recover for any actual damages that result from an FDCPA violation as well as statutory damages of up to $1,000. 15 U.S.C. § 1692k(a). While this case will have to go to trial because of the disputed facts as to liability, SCS still seeks summary judgment on the issue of actual damages to at least limit the available damages to just statutory damages. SCS argues that Wood cannot establish any actual damages, whether that relates to financial losses or emotional distress.

SCS first contends that the record does not support any financial loss. SCS points out that while Wood asserts that he would have obtained a lower interest rate on a car loan but for SCS reporting Wood's debt as undisputed, he offers nothing in the record to support this assertion. SCS also notes that Wood's alleged entitlement to the amounts he paid an attorney to dispute his debt with *PenFed* predates any alleged FDCPA violation by *SCS* and lacks evidentiary support in the record. Wood did not respond to SCS' arguments regarding these alleged financial losses. Accordingly, the Court finds that Wood waived this issue. *See Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 528 (7th Cir. 2005) (finding that the plaintiff waived an issue because she "failed to properly present the issue to the district court in response to [the defendant's] motion for summary judgment"). Perhaps Wood abandoned these two claims for actual damages because he recognized their lack of support in the record and case law. *See Thomas v. L. Firm of Simpson & Cybak*, 244 F. App'x 741, 743 (7th Cir. 2007) (noting that "only losses flowing from an FDCPA violation are recoverable as actual damages"); *Johnson v. Waypoint Res. Grp.*, 596 F. Supp. 3d 1184, 1195–96 (S.D. Ind. 2022) (finding no triable issue as to credit-related or other pecuniary harms because the plaintiff "has no evidence of being denied credit, having credit terms changed, or other financial harms" and did not rebut her deposition testimony "that she incurred no out-of-pocket costs other than attorney's fees"). Regardless of the reason, the Court finds that Wood has identified no basis to pursue actual damages based on any alleged financial losses.

As for emotional distress, Wood claims that he lost sleep on the night he noticed that his Equifax credit report did not indicate that he disputed his debt, and on the four nights thereafter because he was worried about not being able to buy a house due to his supposed decreased creditworthiness. In support, Wood submits an interrogatory response and his own declaration,

6

in which he explains that he experienced "negative emotions, including frustration, annoyance, agitation, and other garden variety emotional distress," Doc. 101-3 at 9, and restates that he could not sleep for five nights because of the potential negative effects of an inaccurate credit report, *see* Doc. 113-2 at 242. SCS argues that this evidence is conclusory and therefore Wood has not proffered any competent evidence of emotional distress so as to survive summary judgment.

The Seventh Circuit "maintain[s] a strict standard for a finding of emotional damage because they are so easy to manufacture." *Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 609 (7th Cir. 2005) (quoting *Sarvar v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004)). Absent facts "so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's actions," a plaintiff whose own "testimony is the only proof of emotional damages . . . must explain the circumstances of his injury in reasonable detail; he cannot rely on mere conclusory statements." *Denius v. Dunlap*, 330 F.3d 919, 929 (7th Cir. 2003).

While Wood has some evidence of emotional damages, he does not have enough evidence in the record for a jury to award actual damages. First, Wood does not argue that SCS' failure to report Wood's debt as disputed is so inherently degrading to allow a reasonable juror to infer Wood's emotional distress. *See Valenta v. Midland Funding, LLC*, No. 17 C 6609, 2019 WL 1429656, at *6 (N.D. Ill. Mar. 29, 2019) ("There is nothing 'inherently degrading' about sending a report to credit bureaus that 'correctly recit[es] the amount of the debt but incorrectly omit[s] that the debt is disputed.'" (alterations in original) (quoting *Francisco v. Midland Funding, LLC*, No. 17 C 6872, 2019 WL 498936, at *6 (N.D. Ill. Feb. 8, 2019)). Second, Wood offers only his own declaration as evidence of emotional injury, in which he does not describe

7

his injury in "reasonable detail." He states that he lost sleep for five nights and experienced negative emotions because of SCS' inaccurate reporting. But these conclusory statements alone cannot support an award of actual damages for emotional distress. *See Clanton v. Midland Funding, LLC*, No. 17 C 8862, 2019 WL 4750015, at *9 (N.D. Ill. Sept. 30, 2019) (finding the plaintiff failed to meet the Seventh Circuit's high bar for emotional distress damages where her only evidence of harm was her own declaration, which consisted of "conclusory statements that she suffered 'stress, aggravation, confusion and humiliation' as a result of her inaccurate credit report"); *Francisco*, 2019 WL 498936, at *6 (finding the plaintiff's evidence of emotional injury insufficient where "[s]he testified to losing sleep and feeling stressed, sick, hot-tempered, annoyed, humiliated, embarrassed, sad, and hopeless," but "she did not substantiate these claims beyond the bare fact of claiming to experience these emotions"); *Johnson*, 596 F. Supp. 3d at 1196–97 (finding the plaintiff's evidence of emotional distress did not create a triable issue because the plaintiff's own testimony did not "describe her emotions beyond the words 'stress' and 'confusion'"). Therefore, the Court grants summary judgment in favor of SCS as to actual damages.

## CONCLUSION

For the foregoing reasons, the Court grants SCS' motion for summary judgment as to actual damages [99]. If Wood prevails on liability, he cannot recover actual damages.

Dated: May 28, 2025

_____
SARA L. ELLIS
United States District Judge